CASE NO. 26-5140

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA PLAINTIFF-APPELLEE

V.

KEITH LAMONT STALLWORTH DEFENDANT-APPELLANT

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

---

# BRIEF OF THE PLAINTIFF-APPELLEE
# UNITED STATES OF AMERICA

---

JASON D. PARMAN
UNITED STATES ATTORNEY

CHARLES P. WISDOM JR.
CHIEF, APPELLATE DIVISION

BY: AMANDA HARRIS HUANG
ASSISTANT UNITED STATES ATTORNEY
260 W. VINE STREET, SUITE 300
LEXINGTON, KENTUCKY 40507-1612
(859) 685-4874
Amanda.HarrisHuang@usdoj.gov

COUNSEL FOR PLAINTIFF-APPELLEE

## TABLE OF CONTENTS


Table of Authorities .......... ii

Statement Regarding Oral Argument .......... vi

Introduction .......... 1

Statement of the Issues .......... 1

Statement of the Case .......... 2

Summary of the Argument .......... 7

Argument

I. Ample evidence supported Stallworth's convictions related to his possession of a machine gun .......... 10

II. This Court should not consider Stallworth's due process claim, and relatedly, the district court did not abuse its discretion in declining to give a spoliation jury instruction .......... 19

III. The district court did not violate Stallworth's Confrontation Clause rights or otherwise improperly limit cross-examination of the cooperating witness. .......... 30

Conclusion .......... 39

Certificate of Compliance

Designation of District Court Documents

## TABLE OF AUTHORITIES

### I. Cases

*Arizona v. Youngblood*,
488 U.S. 51 (1988) .......... 19

*Bates v. United States*,
522 U.S. 23 (1997) .......... 14

*Blackston v. Rapelje*,
780 F.3d 340 (6th Cir. 2015) .......... 30

*California v. Trombetta*,
467 U.S. 479 (1984) .......... 25-26

*Davis v. Alaska*,
415 U.S. 308 (1974) .......... 37

*Dean v. United States*,
556 U.S. 568 (2009) .......... 14-15

*Delaware v. Van Arsdall*,
475 U.S. 673 (1986) .......... 30-32

*Gun Owners of America, Inc. v. Garland*,
19 F.4th 890 (6th Cir. 2021) .......... 11

*McPherson v. Kelsey*,
125 F.3d 989 (6th Cir. 1997) .......... 14

*Musacchio v. United States*,
577 U.S. 237 (2016) .......... 13

*Staples v. United States*,
511 U.S. 600 (6th Cir. 1994) .......... 10, 17

*United States v. Alvarado*,
95 F.4th 1047 (6th Cir. 2024) .......... 34

*United States v. Blake*,
166 F.4th 611 (6th Cir. 2026) ....................30, 34

*United States v. Boxley*,
373 F.3d 759 (6th Cir. 2004) ....................20

*United States v. Braswell*,
704 F. App'x 528 (6th Cir. 2017) ....................20, 22, 27, 29

*United States v. Burwell*,
690 F.3d 500 (D.C. Cir. 2012) .................... 11, 14-15

*United States v. Callahan*,
801 F.3d 606 (6th Cir. 2015) ....................30

*United States v. Collins*,
799 F.3d 554 (6th Cir. 2015) ....................26, 34

*United States v. Curry*,
170 F.4th 559 (6th Cir. 2026) ....................16

*United States v. Eaton*,
784 F.3d 298 (6th Cir. 2015) ....................22

*United States v. Edge*,
989 F.2d 871, (6th Cir. 1993) .................... 21-22

*United States v. Feola*,
420 U.S. 671 (1975)....................15

*United States v. Fey*,
89 F.4th 903 (11th Cir. 2023) .................... 20, 26-27

*United States v. Fisher*,
648 F.3d 442 (6th Cir. 2011) ....................13

*United States v. Folad*,
877 F.3d 250 (6th Cir. 2017) ....................19, 23

*United States v. Fox*,
134 F.4th 348 (6th Cir. 2025) ........................................................................18

*United States v. Gardner*,
No. 25-5321, 2026 WL 2235221 (6th Cir. Aug. 3, 2026) ........................ 21, 23-24

*United States v. Haile*,
685 F.3d 1211 (11th Cir. 2012) ......................................................................11

*United States v. Hendrickson*,
822 F.3d 812 (6th Cir. 2016) ..........................................................................29

*United States v. Jobson*,
102 F.3d 214 (6th Cr. 1996)..................................................................... 19-20, 24

*United States v. Kone*,
307 F.3d 430 (6th Cir. 2002) ............................................................ 34, 36, 38-39

*United States v. Larkins*,
No. 95-5685, 1996 WL 411216 (6th Cir. July 22, 1996) ......................... 21, 23-24

*United States v. Morgan*,
216 F.3d 557 (6th Cir. 2000) .......................................................... 10, 16, 18

*United States v. Perez-Greaux*,
83 F.4th 1 (1st Cir. 2023)........................................................................... 11-12

*United States v. Rogers*,
769 F.3d 372 (6th Cir. 2014) ..........................................................................13

*United States v. Romo-Chavez*,
681 F.3d 955 (9th Cir. 2012) ..........................................................................27

*United States v. Sadler*,
24 F.4th 515 (6th Cir. 2022) ...........................................................................13

*United States v. Sivilla*,
714 F.3d 1168 (9th Cir. 2013) ........................................................................27

*United States v. Spalding*,
438 F. App'x 464 (6th Cir. 2011) ....................20

*United States v. Taylor*,
178 F.4th 1017 (6th Cir. 2026) ....................31, 35, 38

*United States v. Taylor*,
165 F.4th 1029 (6th Cir. 2026) ....................14

*United States v. Taylor*,
127 F.4th 1008 (6th Cir. 2025) ....................32

*United States v. White*,
58 F.4th 889 (6th Cir. 2023) ....................34

*United States v. Williams*,
952 F.2d 1504 (6th Cir. 1991) ....................22, 28

*Vasquez v. Jones*,
496 F.3d 564 (6th Cir. 2007) ....................31

*Wade v. United States*,
504 U.S. 181 (1992) ....................36

*West v. Tyson Foods, Inc.*,
374 F. App'x 624 (6th Cir. 2010) ....................29

**II. Statutes & Guidelines**

18 U.S.C. § 922(o) .................... 10, 13-14

18 U.S.C. § 924(c) .................... 11, 12, 14-15

18 U.S.C. § 924(c)(1)(B)(ii) .................... 14-15

18 U.S.C. § 924(c)(4) ....................15

18 U.S.C. § 3553 ....................36

26 U.S.C. § 5845(b) ........................................................................................11

26 U.S.C. § 5861 ........................................................................................10, 14

U.S.S.G. § 5K1.1........................................................................................36

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. Fed. R. App. P. 34(a).

## INTRODUCTION

This is a straightforward case. It is about a small mechanism with a big impact, a Glock switch. When installed on Stallworth's Glock 27, the Glock switch converted his otherwise semiautomatic handgun into an automatic machine gun capable of emptying numerous bullets in under a second. For that reason, possessing a machine gun, particularly while drug trafficking, has legal consequences. Here, Stallworth possessed a Glock 27 pistol modified with a Glock switch while he was trafficking drugs, but he argues there was insufficient evidence that he knew his Glock 27 was an automatic machine gun. The jury rejected that claim based on ample evidence to the contrary and convicted him of three crimes involving his machine gun. There is no reason to second-guess the jury's verdict here. Stallworth raises other claims. He wishes he had received an unnecessary spoliation jury instruction that is unwarranted under existing circuit law and simultaneously makes a related but meritless due process claim. He also raises a Confrontation Clause challenge related to a government cooperator that he thoroughly cross-examined at trial. This Court should affirm.

## STATEMENT OF THE ISSUES

I. Whether there was sufficient evidence that Stallworth knew about the characteristics that made his Glock 27 pistol a machine gun.

II. Whether this Court should consider Stallworth's meritless due process claim for the first time on appeal and, relatedly, whether the district court abused its discretion when it declined to give a legally inaccurate spoliation jury instruction.

III. Whether the district court violated Stallworth's rights under the Confrontation Clause when it permitted Stallworth to question the cooperating witness about the witness's motives for testifying.

## STATEMENT OF THE CASE

In July and August 2023, the Drug Enforcement Administration investigated Stallworth based on suspicions of drug trafficking. [R. 156: Thomas Clements, TR (Trial Day 1) at 1332.] On one occasion, agents were watching Stallworth and saw him carrying a black handgun with an extended magazine while also carrying what agents believed to be drugs. [R. 156: Travis Steward, TR (Trial Day 1) at 1302, 1305-06, 1315 (explaining drugs were later found inside the same bag Stallworth possessed with the gun)).]

A few days later, agents got a search warrant for Stallworth's apartment that he shared with his girlfriend, Paige Graves. [*Id*. at 1306-07; R. 156: Thomas Clements, TR (Trial Day 1) at 1332.] Before executing the warrant, agents waited for Stallworth at the apartment. [R. 156: Thomas Clements, TR (Trial Day 1) at

1333.] When Stallworth arrived at the apartment, he was alone in his SUV. [*Id.* at 1334.] Agents tried to stop him and turned on their police lights, but he backed his SUV into the police cruiser behind him and "ramm[ed] . . . [the] marked police cruiser multiple times." [*Id.* at 1334; R. 156: Steve Cobb, TR (Trial Day 1) at 1394.] Despite commands from the agents and officers on the scene, Stallworth "wasn't exiting" his SUV. [R. 156: Thomas Clements, TR (Trial Day 1) at 1338.] Once an agent was able to open the door, agents took Stallworth to the ground, searched him, and found a loaded 5.7 caliber semiautomatic pistol and drugs. [*Id.* at 1339-40; R. 156: Steve Cobb, TR (Trial Day 1) at 1398-99; R. 157: Jack Morgan, TR (Trial Day 2) at 1469.] Agents later found a pound of crystal methamphetamine inside the SUV and an additional extended magazine, loaded with .40 caliber ammunition. [R. 156: Thomas Clements, TR (Trial Day 1) at 1341-42; R. 157: Jack Morgan, TR (Trial Day 2) at 1467-68.]

Agents searched the apartment and found a drug processing room. [R. 156: Travis Steward, TR (Trial Day 1) at 1313.] There, agents found a security camera, blenders with residue, narcotic scales, a money counter, a vacuum sealer, two drug presses for pressing powdered drugs into bricks, methamphetamine, and fentanyl. [*Id.* at 1313-15, 1319; R. 156: Thomas Clements, TR (Trial Day 1) at 1343-44, 1351.] In Stallworth's bedroom, agents found cocaine base, fentanyl pills, and

methamphetamine inside a Crown Royal bag. [R. 156: Travis Steward, TR (Trial Day 1) at 1315-16; R. 156: Thomas Clements, TR (Trial Day 1) at 1346.]

Additionally, agents found a Glock 27 handgun loaded with .40 caliber ammunition in an extended magazine in Stallworth's dresser drawer. [R. 156: Thomas Clements, TR (Trial Day 1) at 1347; R. 156: Russell King, TR (Trial Day 1) at 1381-82; R. 157: Jack Morgan, TR (Trial Day 2) at 1471-72.] The Glock 27 had a piece of black electrical tape covering the edge of the firearm, including the backplate. [R. 157: Jack Morgan, TR (Trial Day 2) at 1472-73; R. 163: Notice at 1656 (Gov't Ex. 25).] Agents later learned that the handgun was equipped with a silver Glock switch, a device "placed on the back of the firearm to make it a machine gun," so that with "one pull of the trigger[,] every piece of ammunition in the magazine" is released. [R. 157: Jack Morgan, TR (Trial Day 2) at 1470-72, 1489-91; R. 163: Notice at 1650-54 (Gov't Ex. 3).] Indeed, an agent test-fired the Glock 27, and to his surprise, it fired repeated rounds at once, consistent with a machine gun. [R. 157: Jack Morgan, TR (Trial Day 2) at 1484-86.] The Glock switch was more difficult for agents to recognize here not only due to the electrical tape covering the silver Glock switch, but also because the switch was "low profile" and unlike other switches that agents had previously seen. [*Id.* at 1485.] Ultimately, it looked like the switch was "handmade." [*Id.* at 1486.] It was overall "crude[ly] manufactur[ed]" and would have only taken "trial and error" to create.

[R. 157: John Miller, TR (Trial Day 2) at 1524.] Unlike other similar devices, this switch was designed to be fully automatic "all the time," and there was no mechanism to turn the pistol back to a semiautomatic gun without removing the switch. [*Id.* at 1526-27.]

In hindsight, there were several aspects of the Glock 27 that made it appear more like a machine gun than a typical semi-automatic gun. [R. 157: Jack Morgan, TR (Trial Day 2) at 1486.] First, there were no "sights" on the gun. [*Id.*] The sights help ensure you accurately aim at your target, but sights are not needed with the Glock switch installed, since after you pull the trigger, the entire magazine unloads at the target, and the gun "just goes up in the air." [*Id.* at 1486-87.] Second, officers never found any "factory magazine[s]" for the Glock 27 during the search of the apartment or the SUV. [*Id.* at 1487.] The magazines that officers recovered were all extended magazines that held more ammunition. [*Id.* at 1487.] This made sense because a smaller factory magazine would exert all nine rounds in less than a second. [*Id.*] Finally, with closer inspection, there was "a little bit of silver" visible through the electrical tape on the "back plate" of the Glock 27. [R. 157: Thomas Clements, TR (Trial Day 2) at 1538.] Thus, it "was not the normal back plate for a Glock." [*Id.*]

After being arrested, Stallworth admitted "it was all his" and said that he did not "care to do 10 to 20 fed time." [R. 156: Russell King, TR (Trial Day 1) at

1378-79.] He later repeated to another agent that "[i]t's all mine." [R. 156: Thomas Clements, TR (Trial Day 1) at 1368.]

Agents subsequently learned that a cooperator in another case, David Sam, had known Stallworth for many years and had given Stallworth drugs in exchange for a Glock pistol and an AR-15. [R. 157: David Sam, TR (Trial Day 2) at 1428-35.] The exchanges occurred at Stallworth's apartment. [*Id.* at 1434-35.] One day, when the pair were discussing guns, Stallworth asked Sam if he wanted "to have a switch put on the Glock." [*Id.* at 1436.] Stallworth then showed Sam "a Glock [handgun] that had a switch on the back" and an extended magazine. [*Id.* at 1436, 1438-39.] After making a hand gesture indicating that "multiple bullets [shoot] at one time," Stallworth told Sam that that you "just shoot." [*Id.* at 1437-38.] Sam declined to purchase the Glock armed with a switch because he "didn't' want . . . a fully automatic gun." [*Id.* at 1439.] The regular Glock that Sam got from Stallworth was recovered by law enforcement in Sam's criminal case. [*Id.* at 1431-32, 1436, 1439.]

A federal grand jury returned an indictment charging Stallworth with drug and gun charges. [R. 29: Superseding Indictment at 90-96.] Stallworth pleaded guilty to the drug charges, including possession with intent to distribute forty grams or more of fentanyl (count one), possession with intent to distribute fifty grams or more of methamphetamine (count two), and maintaining a residence for

the purpose of manufacturing and distributing controlled substances (count nine). [R. 157: Thomas Clements, TR (Trial Day 2) at 1539; R. 137: Judgment at 962.] He proceeded to trial on the gun charges, including carrying and using a firearm during and in relation to drug trafficking (count three), possession of a machine gun in furtherance of drug trafficking (count four), possession of firearms as a felon (count five), possession of a machine gun (count seven), and receiving an unregistered machine gun (count eight). [R. 29: Superseding Indictment at 92-95; R. 137: Judgment at 962.]

The jury convicted him on all counts. [R. 111: Jury Verdict at 550-51.] The district court sentenced him to a total term of 780 months of imprisonment. [R. 137: Judgment at 964.] This appeal followed. [R. 138: Notice of Appeal at 970.]

## SUMMARY OF THE ARGUMENT

I. Ample evidence showed that Stallworth knowingly possessed a gun with the characteristics of a machine gun. As an initial matter, Stallworth does not pinpoint the convictions he challenges. To the extent he challenges his enhanced sentence for possession of a machine gun in furtherance of drug trafficking, that statute does not require proof that a defendant knew his gun had the characteristics of a machine gun. But the court need not decide that issue because ample evidence

showed that Stallworth knew his Glock 27 pistol was equipped with a Glock switch transforming it into an automatic machine gun.

After all, a cooperating witness testified about a conversation he had with Stallworth where Stallworth offered to sell him a Glock equipped with a Glock switch. Stallworth even showed the cooperator a Glock equipped with a switch in the apartment that agents later recovered the Glock machine gun in this case. And other evidence supported Stallworth's knowledge. Although the Glock switch was covered with electrical tape, a small bit of silver showed through the tape, indicating that the gun had been modified. Additionally, Stallworth only possessed extended magazines for the Glock 27, supporting the expectation of automatic and rapid fire. The sights had also been removed from the gun because sights are not necessary on this type of automatic weapon. In short, ample evidence supported Stallworth's convictions for possession of a machine gun, receipt of an unregistered machine gun, and possession of a machine gun in furtherance of drug trafficking.

II. This Court should not consider Stallworth's due process claim that he raises for the first time on appeal. Regardless, that claim is meritless because it requires proof that the agents destroyed evidence in bad faith. Stallworth has not and cannot make that showing here because agents merely neglected to collect electrical tape that they removed from the Glock 27 machine gun when it was test

fired. And agents would not have recognized any exculpatory value to the electrical tape because it is not exculpatory evidence. Moreover, there were photographs and videos of the Glock 27 when it was recovered showing the electrical tape intact. Thus, Stallworth had access to similar evidence.

Relatedly, the district court did not abuse its discretion when it declined to give a legally inaccurate spoliation jury instruction about the discarded electrical tape. In this Circuit, as in most other courts, a spoliation instruction is only appropriate if evidence is discarded with the purpose of rendering it useless to the opposing party, *i.e.* spoiling it. There is no such evidence here, and Stallworth's proposed instruction was thus legally inaccurate. And a spoliation instruction was not warranted on these facts. Regardless, the failure to give a spoliation instruction, even if it had been warranted, was harmless.

III. The district court did not violate Stallworth's rights under the Confrontation Clause. Although Stallworth made some initial requests regarding cross-examining the government's cooperating witness, it is not clear that he ever objected or argued that some improper limit was being placed on his ability to question the witness about his motives to testify. For that reason, the Court's review should be for plain error. Regardless, there were no limits, improper or otherwise, placed on Stallworth's ability to question the witness about the witness's hope or expectation that he would receive a benefit for his testimony.

Indeed, the court explicitly held that Stallworth could and should examine that point. And he, in fact, questioned the cooperator about his expectations during cross examination. The fact that the witness testified that any benefit was a mere possibility does not amount to a limit on cross examination, let alone establish a Confrontation Clause error. Regardless, the jury had sufficient information to assess Stallworth's theory of the witness's improper motive here, and the government's interest in avoiding a mini trial about the witness's own conduct outweighed any interest Stallworth had in further cross-examination.

## ARGUMENT

### I. Ample evidence supported Stallworth's convictions related to his possession of a machine gun.

Relevant here, to sustain a conviction for possession of a machine gun, in violation of 18 U.S.C. § 922(o), and receipt of an unregistered machine gun, in violation of 26 U.S.C. § 5861, the government is required to show that the defendant knew that the gun had the characteristics that made the weapon a machine gun. *See Staples v. United States*, 511 U.S. 600, 619 (6th Cir. 1994) (holding government required "to prove petitioner knew of the features of his" gun to convict for possession of unregistered machine gun); *United States v. Morgan*, 216 F.3d 557, 567 (6th Cir. 2000) (applying *Staples* to § 922(o)). It is unsettled in this Court whether, to sustain an enhanced sentence for possessing a machine gun

in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c), the government is required to prove that Stallworth knew that the gun he possessed had the characteristics of a machine gun. *Compare, e.g.*, *United States v. Burwell*, 690 F.3d 500, 511-15 (D.C. Cir. 2012) (en banc) (affirming circuit precedent holding that knowledge of machine gun is not required); *United States v. Haile*, 685 F.3d 1211, 1218 (11th Cir. 2012) (same), *with United States v. Perez-Greaux*, 83 F.4th 1, 17-20 (1st Cir. 2023) (concluding that knowledge of machine gun is required); *Burwell*, 690 F.3d at 524-26 (Rogers, J., dissenting) (same); *id.* at 528-29 (Kavanaugh, J., dissenting) (same).

A machine gun means "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." *Gun Owners of America, Inc. v. Garland*, 19 F.4th 890, 897-98 (6th Cir. 2021) (quoting 26 U.S.C. § 5845(b)). The definition "also includes 'the frame or receiver of any such weapon' as well as any part designed and intended solely and exclusively, or [in] combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.'" *Id.* at 897 (quoting 26 U.S.C. §5845(b)). "In other words, a fully automatic weapon is one that fires continuously with a single pull of the trigger and stands in contrast to a semi-

automatic firearm, which chambers a new round automatically, but requires a new pull on the trigger to fire." *Perez-Greaux*, 83 F.4th at 13, 26 (citation modified).

At the close of the government's case, Stallworth moved for a directed verdict. [R 157: Philip Lawson, TR (Trial Day 2) at 1543.] The court denied the motion, finding "sufficient evidence that a reasonable jury could return a verdict of guilty on all counts" at trial. [R. 157: Court, TR (Trial Day 2) at 1544.] As for Stallworth's knowledge that the gun he possessed was a machine gun, the court found that the "testimony from the witness, David Sam" showed that Stallworth "knew the characteristics of" an automatic weapon. [R. 158: Court, TR (Trial Day 3) at 1575.] Moreover, the silver part of the gun was visible through the tape and the presence of the extended magazines further showed that Stallworth knew he possessed a machine gun. [*Id.*]

Prior to instructing the jury, the district court acknowledged that there is no precedent in this Circuit regarding whether the government is required to prove that the defendant knew "that the weapon was a machine gun" for purposes of the thirty-year mandatory sentence under § 924(c). [R. 157: Court, TR (Trial Day 2) at 1544.] Because "the law is ambiguous . . ." the court determined that instructing the jury on the "higher standard of knowledge" was proper. [*Id.* at 1545.] The court, however, acknowledged the government's position that knowledge was not a requirement for purposes of § 924(c). [*Id.* at 1551.]

This Court reviews sufficiency of the evidence claims *de novo*. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011). A defendant "faces a very heavy burden in attempting to overturn the denial of a Rule 29 motion." *United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014). "In reviewing the sufficiency of the evidence, the relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sadler*, 24 F.4th 515, 539 (6th Cir. 2022). "All reasonable inferences must be made to support the jury verdict." *Id.* "When considering the sufficiency of the evidence," this Court "cannot reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* (cleaned up). Finally, "when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." *Musacchio v. United States*, 577 U.S. 237, 243 (2016).

As an initial matter, Stallworth challenges his "conviction for possession of a machinegun," but he does not articulate the machine gun conviction(s) he challenges. Stallworth's Brief at 2, 17-26. He cites only to cases that address the elements required to prove possession of a machine gun, in violation of 18 U.S.C.

§ 922(o), and receipt of an unregistered machine gun, in violation of 26 U.S.C. § 5861. Stallworth's Brief at 18-26 (citing only *Staples* and *Morgan*). To the extent he challenges his enhanced penalty for possession of a machine gun in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c), he has done so only in a perfunctory manner and has thus forfeited that claim. *United States v. Taylor*, 165 F.4th 1029, 1036 (6th Cir. 2026) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)).

Regardless, as it relates to Stallworth's conviction under 18 U.S.C. § 924(c), the government was not required to prove the only potential element he challenges on appeal—his knowledge that the gun was a machine gun. *See Burwell*, 690 F.3d at 516. Indeed, "§ 924(c)(1)(b)(ii) does not require the government to prove that a defendant *knew* that the weapon he . . . possessed was a machinegun." *Id.* (emphasis added).

The government is not required to prove the defendant's knowledge that he possessed a machine gun under § 924(c) for good reason. First, the statute does not expressly impose such a mental-state requirement, and courts "ordinarily resist reading words or elements into a statue that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997); *see also Dean v. United States*, 556 U.S. 568, 572-77 (2009) (holding ten-year penalty for "brandishing" applies to accidental discharges, not just knowing and intentional discharges of firearm).

Second, the statute uses the passive voice, focusing on what happened—not on who engaged in the conduct or why he did so. *See* 18 U.S.C. § 924(c)(1)(B)(ii). Third, § 924(c) expressly refers to the defendant's mental state in other locations in the statute, underscoring the absence of a comparable requirement in the provision at issue here. *See, e.g.*, 18 U.S.C. 924(c)(4) (defining "brandish" to mean displaying a firearm "in order to intimidate").

Moreover, the "concerns animating the presumption in favor of *mens rea* . . . simply are not present" here, since the defendant "knows from the very outset that his planned course of conduct is wrongful." *Burwell*, 690 F.3d at 507 (quoting *United States v. Feola*, 420 U.S. 671, 685 (1975)). "[I]t is not unusual to punish individuals for the unintended consequences of their *unlawful* acts." *Dean*, 556 U.S. at 575. Indeed, "[h]ere[,] the defendant is already guilty of unlawful conduct twice over: a . . . drug trafficking offense and the . . . possession of a firearm in the course of that offense. That unlawful conduct was not an accident." *Id.* at 576.

But this Court need not wade into the circuit conflict regarding whether knowledge of the characteristics of machine gun is required to sustain a conviction under 18 U.S.C. § 924(c)(1)(B)(ii) because ample evidence supports that element, assuming it is required. And as the district court found, the same evidence is sufficient to support all three of Stallworth's machine gun-related convictions here

(counts four, seven, and eight). [R. 158: Court, TR (Trial Day 3) at 1575; R. 29: Superseding Indictment at 92-94.]

The most damning evidence of Stallworth's knowledge that his Glock 27 possessed the characteristics of a machine gun was the testimony of David Sam, but Stallworth does not grapple with this evidence in his sufficiency challenge. Stallworth's Brief at 17-26. Sam testified that he purchased guns from Stallworth and that Stallworth offered to sell him a Glock with a Glock switch. [R. 157: David Sam, TR (Trial Day 2) at 1433-36.] Moreover, Stallworth showed Sam a Glock with a switch in Stallworth's apartment—the same apartment where the Glock 27 with a Glock switch was later recovered in this case. [*Id.* at 1436-37.] Stallworth even described the Glock switch to Sam by explaining you "[j]ust shoot." [*Id.* at 1437.] These facts show that Stallworth was familiar with both Glock handguns and Glock switches. Thus, contrary to Stallworth's argument on appeal, Stallworth's Brief at 21, there was strong evidence that he knew what a switch looked like, how it operated, and was in possession of one leading up to his arrest in this case. *See Morgan*, 216 F.3d at 567-68 (finding defendant's knowledge of firearms and automatic guns relevant for sufficiency purposes). And on appeal, "[a]ll reasonable inferences must be made in the government's favor." *United States v. Curry*, 170 F.4th 559, 567 (6th Cir. 2026).

There was other evidence from which a reasonable jury could infer Stallworth's knowledge that his Glock 27 had the characteristics of a machine gun, particularly when coupled with his special knowledge on the subject. *See Staples*, 511 U.S. at 615 n.11 (explaining "knowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon"). First, there were no "sights" on the Glock 27 because this type of automatic gun does not require repeated aim. [R. 157: Jack Morgan, TR (Trial Day 2) at 1486.] After you pull the trigger of the Glock 27 with a switch, the entire magazine unloads at the target, and the gun "just goes up in the air." [*Id.* at 1486-87.] Second, Stallworth only possessed extended magazines for the Glock 27 because a machine gun would empty a standard magazine so quickly. [*Id.* at 1486-87.] Third, there was electrical tape covering the edge of the Glock 27, but there was "a little bit of silver" visible through the electrical tape on the "back plate." [R. 157: Thomas Clements, TR (Trial Day 2) at 1538.] Someone like Stallworth who was familiar with Glock handguns and Glock switches would know this was not the standard backplate for a Glock. [*Id.*] Fourth, the Glock switch appeared to be "handmade," indicating that Stallworth or someone else created and installed the device after market. [R. 157: Jack Morgan, TR (Trial Day 2) at 1486, 1492.]

Ultimately, agents found the Glock 27 in Stallworth's dresser drawer with his things, and it was loaded with an extended magazine. [R. 156: Thomas

Clements, TR (Trial Day 1) at 1348-49, 1354; R. 156: Russell King, TR (Trial Day 2) at 1381-82.] Moreover, there was another extended magazine clip matching the same caliber found in his car, indicating Stallworth both handled and carried the gun. [R. 157: Jack Morgan, TR (Trial Day 2) at 1467-68.] Looking at the evidence collectively, it shows—at a minimum—that Stallworth observed and had knowledge that the Glock 27 was a machine gun. Even still, a reasonable jury could also infer that Stallworth himself created and installed the Glock switch that made the Glock 27 a machine gun. This Court will not reverse "a conviction" where, as here, it is "supported by substantial and competent evidence." *United States v. Fox*, 134 F.4th 348, 366 (6th Cir. 2025).

Stallworth fails to acknowledge this evidence and instead "makes much of the fact that" several agents did not realize that "the firearm was automatic," *Morgan*, 216 F.3d at 568, when they initially seized it. Stallworth's Brief at 22-23. But the question is not whether the agents immediately recognized the Glock was a machine gun but whether *Stallworth* "knew the weapon was automatic." *Morgan*, 216 F.3d at 568. For all the reasons outlined above, there was ample evidence from which a reasonable jury could infer that Stallworth was familiar with guns and Glock switches and knew about the Glock switch on his own firearm.

Finally, Stallworth claims the government should have submitted direct proof that he had fired the gun or installed the Glock switch personally. Stallworth's Brief at 21. But the government is not required to prove its case in a particular manner. Although those facts would have been sufficient to sustain his convictions, it does not make them necessary. Nor does it undermine the other sufficient evidence in this case.

## II. This Court should not consider Stallworth's due process claim, and relatedly, the district court did not abuse its discretion in declining to give a spoliation jury instruction.

"The Due Process Clause prohibits the government from destroying evidence in a criminal case under specific circumstances." *United States v. Folad*, 877 F.3d 250, 253 (6th Cir. 2017). The failure to preserve "apparently exculpatory" evidence "violates due process regardless of the government's good or bad faith." *Id.* But the failure to preserve "only 'potentially useful'" evidence "offends due process only if done in bad faith. *Id.* (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)). To prove a due process claim, a defendant must also show that "the exculpatory value of the evidence was apparent before its destruction; and . . . that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other

reasonably available means." *United States v. Jobson*, 102 F.3d 214, 218 (6th Cr. 1996).

Relatedly, spoliation is "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Spalding*, 438 F. App'x 464, 467 (6th Cir. 2011) (quoting *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004)). "Intentional destruction" is "removal with the purpose of rendering it inaccessible or useless to the defendant in preparing [his] case; that is, spoiling it." *Id.* A court does not abuse its discretion when it "refuse[s] to give a spoliation instruction based on the failure to preserve evidence in the absence of bad faith." *United States v. Braswell*, 704 F. App'x 528, 535 (6th Cir. 2017). Indeed, most courts acknowledge that negligent destruction of evidence "is not enough" to warrant a spoliation instruction in a criminal trial. *United States v. Fey*, 89 F.4th 903, 914 (11th Cir. 2023) (collecting cases).

Relevant here, an agent removed part of the electrical tape that was found on Stallworth's Glock 27 when the firearm was test-fired. [R. 157: Jack Morgan, TR (Trial Day 2) at 1488, 1500.] This is routinely done so that agents can see "identify[ing]" characteristics and serial numbers on the firearm. [*Id.* at 1488, 1500.] And it was done here after agents realized the gun was firing as an automatic weapon. [*Id.*] Agents failed to collect the tape after it was removed, and

the tape was either "thrown in the trash or left" at the table where the firearm was being examined and test fired. [*Id.* at 1500.]

Stallworth later requested a Ninth Circuit pattern jury instruction stating that "[i]f you find that the government intentionally destroyed" or "failed to preserve" the electrical tape "that the government knew or should have known would be evidence in this case, you may infer but are not required to infer that the evidence was unfavorable to the government." [R. 157: Philip Lawson, TR (Trial Day 2) at 1559.] The court denied his request. [R. 157: Court, TR (Trial Day 2) at 1560.] The court explained that a spoliation instruction was not necessary here, where "[t]here was ample evidence in the record, including a photograph from the defendant's own exhibit, that there was a piece of tape on the gun when it was collected." [*Id.*] Additionally, the chain of custody of the gun "was well established," and there was testimony about the discarded tape. [*Id.*]

"When a defendant fails to make a due-process argument before the district court, 'we will only consider it [on appeal] if the case is exceptional or if refusing to consider it would produce a plain miscarriage of justice.'" *United States v. Gardner*, No. 25-5321, 2026 WL 2235221, at *3 (6th Cir. Aug. 3, 2026) (quoting *United States v. Edge*, 989 F.2d 871, 876 (6th Cir. 1993) (per curiam)). If it is reviewed at all, the claim should be reviewed for plain error. *United States v. Larkins*, No. 95-5685, 1996 WL 411216, at *3 (6th Cir. July 22, 1996).

This Court reviews a "district court's jury instructions" for abuse of discretion. *United States v. Eaton*, 784 F.3d 298, 306 (6th Cir. 2015). The question is whether, "the instructions as a whole . . . adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *Id.* at 306-07 (citation modified). "A district court's refusal to deliver a requested instruction is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991). This type of jury instruction is also subject to harmless-error review. *Braswell*, 704 F. App'x at 547 (White, J. concurring). And any error is "harmless if there is a preponderance of the evidence that the error did not materially affect the verdict." *Id.*

*a. Due Process*

Here, this Court should "exercise [its] discretion to not review the argument" that Stallworth's due process rights were violated because he failed to preserve it below and has not shown his case to be "exceptional." *Edge*, 989 F.2d at 876. Indeed, this Court recently explained that it could "decline to address" the argument under nearly identical circumstances because requesting a spoliation instruction in the trial court did not preserve a "*Youngblood* due-process argument"

on appeal. *Garnder*, 2026 WL 2235221, at *3 & n.2. And even under more serious circumstances where police destroyed marijuana plants and did not photograph or video the plants, this Court still found the case to be unexceptional and explained it did not "warrant[] the exercise of [its] discretion." *Larkins*, 1996 WL 411216, at *3. Here too, the matter is unexceptional, and the Court should not review the unpreserved claim.

Regardless, Stallworth's due process claim also fails on the merits. Most glaringly, he does not and cannot show that the electrical tape was "apparently exculpatory" as required to show due process violation in the absence of bad faith. *Folad*, 877 F.3d at 253. After all, the tape merely covered the edge of the Glock 27, including the Glock switch that had been installed. [R. 157: Jack Morgan, TR (Day 2) at 1488.] That fact was not in dispute at trial. [*Id.*] The electrical tape was not essential to the functioning of the gun as a machine gun or otherwise, and there were photos admitted into evidence of the gun when the tape was intact. [*Id.* at 1487-88; R. 163: Notice at 1655-56 (Gov't Exs. 20h, 25).]

Assuming then that the electrical tape was "potentially useful," Stallworth would need to show that the tape was destroyed in "bad faith." *Folad*, 877 F.3d at 253. There is no evidence or even an allegation that the agents examining the Glock 27 destroyed the electrical tape in bad faith. To the contrary, the evidence showed that the agents were test firing the Glock 27 and removed the tape after

realizing it was functioning as an automatic weapon. [R. 157: Jack Morgan, TR (Trial Day 2) at 1500.] The tape was "either thrown in the trash or left there on the table." [*Id.*] There is nothing to suggest that the agents had nefarious intent. Rather, the evidence suggests they were investigating the firearm and simply forgot about the tape they had removed. At most, the officers were negligent in not preserving the tape, but even "gross[] negligen[ce]" is insufficient to establish bad faith. *Jobson*, 102 F.3d at 218. Although it might have been better practice to retain the electrical tape, the "team's actions do not clearly indicate bad faith, as required by" *Youngblood*, "and thus do not demonstrate a violation of the due process clause. *Larkins*, 1996 WL 411216, at *3.

And even if Stallworth could show bad faith, he has not shown that the "exculpatory value of the evidence was apparent before its destruction" or that he was "unable to obtain comparable evidence." *Gardner*, 2026 WL 2235221, at *4. In fact, he has "arguably forfeited his due-process claim entirely by failing to present any argument on" these required elements. *Id.* Indeed, Stallworth did have comparable evidence in the form of photo and video evidence, as well as uncontradicted testimony, about the way the Glock 27 originally appeared with the tape intact. *See supra* at 4-5, 23. Stallworth's claim that he "lost the opportunity to have the evidence independently examined," is simply untrue. Stallworth's Brief at 30. After all, he could have had the firearm examined at any time, and the

tape was unnecessary to the function of the gun. [R. 157: Jack Morgan, R (Trial Day 2) at 1506 (testifying about repeated test firing the gun after tape was removed).] His claim that the tape was relevant "to whether the alleged conversion was obvious to someone possessing the handgun" is disingenuous. Stallworth's Brief at 31. It was uncontested that the Glock switch was covered by the electrical tape, that it was a low-profile switch, and that officers did not notice the switch until the gun was test fired. *See supra* at 4-5. The government's argument was not that it was glaringly obvious that the Glock 27 was a machine gun. Rather, the government argued that there were some subtle aspects about the gun that would have at least been apparent to someone like Stallworth, who was well-versed in Glocks and Glock switches. [R. 157: Jack Morgan, TR (Trial Day 2) at 1486-87 (testifying about facts that "made sense" when agents realized that the Glock was a machine gun); R. 158: Roger West, TR (Trial Day 3) at 1580, 1584-85; R. 158: Court, TR (Trial Day 3) at 1575 (denying motion for judgment of acquittal).] Moreover, the government argued Stallworth himself would have wanted to "conceal" the Glock switch with a piece of electrical tape. [R. 158: Roger West, TR (Trial Day 3) at 1599.]

One final point, Stallworth refers to his "meaningful opportunity to present a complete defense." Stallworth's Brief at 33. It is unclear what Stallworth hopes to add with this reference. It is true that the Constitution affords "criminal

defendants . . . a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). But in terms of destroyed evidence, the Court has developed the due process tests outlined above to ensure that a defendant has access to evidence. *See United States v. Collins*, 799 F.3d 554, 569 (6th Cir. 2015) (explaining *Trombetta* and *Youngblood*). And as explained *supra*, Stallworth has not and cannot show that the electrical tape had an exculpatory value that was apparent before it was discarded; nor can he show that he was unable to obtain comparable evidence, since he had photos and videos of the gun. *Id.* And since the electrical tape, at best, was "potentially useful," he also cannot show that the tape was destroyed in bad faith. This is all that is required under the Constitution. *Id.*

### *B. Spoliation Instruction*

As for the jury instruction claim, the district court did not abuse its discretion in declining to give Stallworth's proposed out-of-circuit jury instruction. First, Stallworth's proposed jury instruction was not an accurate statement of the law because it instructed the jury that it could assume that the electrical tape was somehow unfavorable to the government if the government merely failed to preserve the tape. [R. 157: Philip Lawson, TR (Trial Day 2) at 1559.] But that is not the law in this Circuit. This Court requires proof of bad faith to justify a spoliation instruction, as do most other circuits. *See Fey*, 89 F.4th at 914

(collecting cases and citing this Court's decision in *Boxley*). Indeed, even in the Ninth Circuit, where Stallworth found his proposed instruction, there is an *intra* circuit split regarding whether bad faith is required to justify a spoliation instruction. *Braswell*, 704 F. App'x at 536 (noting intra-circuit split); *compare United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012) ("a criminal defendant must establish . . . . that the evidence was destroyed in bad faith"), *with United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013) (holding that "[b]ad faith is the wrong legal standard for a remedial jury instruction"). And the Eleventh Circuit has questioned whether a "spoliation instruction should [ever] be given in a criminal trial." *See Fey*, 89 F.4th at 913-14 (explaining the court had never ruled that it was proper in a criminal trial and if it was, bad faith would be required). As explained *supra*, there was no evidence of bad faith in this case, and thus, a spoliation instruction would be improper even if the instruction had been modified to only instruct on bad faith.

Second, the sentiment was already substantially covered by the jury instructions. Indeed, the jury was already instructed that it could make "reasonable inferences." [R. 109: Jury Instructions at 510.] Moreover, the court instructed them to consider "how believable the witness's testimony was in light of all the other evidence." [*Id.* at 513.] As the district court explained, there was witness testimony about what happened with the electrical tape, and there were

photographs of the gun before and after the tape was removed. [R. 157: Court, TR (Trial Day 2) at 1560.] Given the instructions and the evidence, the jury was already able to decide whether the failure to preserve the electrical tape was important to any of the properly instructed elements of the crimes charged.

Third and perhaps most importantly, the spoliation instruction was not "a point so important in the trial that the failure to give it substantially impair[ed]" Stallworth's defense. *Williams*, 952 F.2d at 1512. Indeed, it is not clear what point Stallworth hoped to prove with the electrical tape or what unfavorable inferences could be drawn from the agents' failure to preserve it. During closing argument, he argued that "what happened with this tape is concerning . . . because it calls into question what happened." [R. 158: Philip Lawson, TR (Trial Day 3) at 1593.] He further argued that because one officer's initial report did not mention the tape, the "chain of events in this situation raise[s] reasonable doubt regarding whether" Stallworth possessed a machine gun. [*Id.* at 1594.] Thus, any point Stallworth hoped to make with the lost tape was already presented and rejected by the jury. And the suggestion that the agents' failure to preserve the tape somehow called into question whether the Glock 27 was a machine gun made little sense. This is particularly true where the video and photographic evidence showed images of the gun with the electrical tape when it was seized from Stallworth's drawer.

Finally, any error in declining to give the instruction was harmless. *Braswell*, 704 F. App'x at 547 (White, J. concurring). That is to say, "a preponderance of the evidence shows that [any] error did not materially affect the verdict." *United States v. Hendrickson*, 822 F.3d 812, 824 n.5 (6th Cir. 2016) (citation modified). Here, an instruction that permitted the jury to "infer" that the electrical tape was "unfavorable to the government" was no different than what Stallworth already argued unsuccessfully at trial. Put another way, "[a] permissive adverse-inference instruction is 'simply a formalization of what the jurors would be entitled to do even in the absence of a specific instruction.'" *Braswell*, 704 F. App'x at 547 (White, J. concurring) (quoting *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 635 (6th Cir. 2010)). Here, particularly where there was already photographic evidence showing the gun with and without the electrical tape, "there is no reason to think a spoliation instruction would have changed" the jurors' minds. *Id.* at 548. Moreover, there was already substantial proof connecting Stallworth to the gun, and he does not contest the fact that he possessed the gun on appeal. *See* Stallworth's Brief at 18. Finally, the physical presence of the electrical tape would add nothing more than the photos already showed. The government did not contest Stallworth's main point below and on appeal. That is, it was not immediately obvious that the Glock 27 was a machine gun. This takes

the wind out of the sails of a claim that the tape would have made a difference. The jury already understood the claim and rightly rejected it.

### III. The district court did not violate Stallworth's Confrontation Clause rights or otherwise improperly limit cross-examination of the cooperating witness.

"So long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *United States v. Callahan*, 801 F.3d 606, 624 (6th Cir. 2015). "A trial court violates the Confrontation Clause when it prohibits a defendant from 'engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness.'" *United States v. Blake*, 166 F.4th 611, 622 (6th Cir. 2026). (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)). "Prototypical forms of bias include: (1) 'the witness's criminal history or status as a parolee or probationer'; (2) 'any immunity or plea deals' involving the witness; (3) the witness's 'inconsistent statements'; and (4) 'other prejudices, or ulterior motives,' that can undermine the witness's reliability." *Id.* (quoting *Blackston v. Rapelje*, 780 F.3d 340, 349 (6th Cir. 2015)). "It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from

imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." *Van Arsdall*, 475 U.S. at 679.

Instead, "[t]rial courts have wide latitude to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, or repetitive or marginally relevant interrogation." *United States v. Taylor*, 178 F.4th 1017, 1025 (6th Cir. 2026) (citation modified). "The key issue is whether the jury had enough information about the witness's motives for testifying despite the limits placed on cross-examination." *Id.* (citation modified). And this Court uses "a three-step process to analyze whether a trial court has violated a defendant's confrontation rights by limiting cross-examination." *Id.* First, this Court "decide[s] whether the district court limited" a defendant's "ability to cross-examine [the witness] about his bias prejudice, or motive to testify." *Id.* (citation modified). If so, then the Court next "consider[s] whether, despite the limits placed on the crosse-examination, the jury had enough information to assess" the defendant's "theory of bias or improper motive." *Id.* (citation modified). "If the jury lacked sufficient information . . . ," this Court balances "the government's interests against" the defendant's "right to confront" the witness." *Id.* at 1025-26 (citation omitted).

"Confrontation Clause errors are subject to harmless-error analysis." *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007). In other words, "[a]n

otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Van Arsdall*, 475 U.S. at 681. In making this determination, this Court considers "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* at 684; *see also United States v. Taylor*, 127 F.4th 1008, 1018 (6th Cir. 2025).

Prior to Sam's testimony, Stallworth advised the court that he wanted to question Sam about his cooperation in an unrelated case, and the court ruled that Stallworth could question Sam about whether "he testified on behalf of the government in the past and [whether] has he received a benefit." [R. 156: Court, TR (Trial Day 1) at 1406-07.] The court held that Stallworth could not ask about "what's in th[e] 5k [motion in the unrelated case] other than he got the benefit and how much it was." [*Id.* at 1409-10.] The court also ruled that Stallworth could question Sam about his "motivat[ion] to lie by cooperating with the government" in this case and explained he could "explore that in" terms of Sam's "hope[] of getting a reduced sentence." [*Id.* at 1414.] The government, "of course," was "entitled to" highlight that it had not made Sam "any promises." [*Id.*] Defense

counsel agreed that the particulars of cross examination would be something that "we'll kind of keep working on and chewing on as it goes." [R. 156: Philip Lawson, TR (Trial Day 1) at 1414.]

At trial, Sam admitted he was presently serving a ten-year sentence in federal custody for crimes associated with guns, methamphetamine, and fentanyl. [R. 157: David Sam, TR (Trial Day 2) at 1427-30.] He testified that he cooperated in an unrelated case and received a lower sentence for that cooperation. [*Id.* at 1440-41, 1456.]

The parties approached the bench prior Stallworth's cross-examination of Sam. [R. 157: Colloquy, TR (Trial Day 2) at 1443.] The district court had already declined to allow Stallworth to question Sam about the details of his underlying criminal conduct and arrest. [R. 157: Court, TR (Trial Day 2) at 1424.] But the court clarified that Stallworth could question Sam more generally about his arrest, guilty plea, and conviction and explained that the government could "object" if Stallworth's questions went "too far." [*Id.* at 1443.] The government never objected to any of Stallworth's questions during cross-examination. [R. 157: David Sam, TR (Trial Day 2) at 1444-54.]

On cross-examination, Sam confirmed that he had pleaded guilty to drug and gun charges in July 2023. [*Id.* at 1445-47.] He also acknowledged that he had received no promises during his prior testimony but nevertheless received

a sentencing benefit in that case, with the suggestion being that he would receive an additional benefit from the testimony in this case. [*Id.* at 1447-49.] He also testified that he "possibly" had a "good faith expectation" that he would receive a "benefit" for his testimony in this case. [*Id.* at 1449.]

Typically, this Court reviews "alleged violations of the Confrontation Clause de novo." *Blake*, 166 F.4th at 622. Where a defendant raises a Confrontation Clause claim for the first time on appeal, it is reviewed for plain error. *See Collins*, 799 F.3d at 584 (explaining an objection on other grounds did not preserve Confrontation Clause claim). "'To prevail under the plain-error standard, a defendant must establish (1) error, (2) that is plain, and (3) that affects substantial rights.'" *United States v. Alvarado*, 95 F.4th 1047, 1051 (6th Cir. 2024) (quoting *United States v. White*, 58 F.4th 889, 893 (6th Cir. 2023)).

As the exchange between the court and defense counsel made clear, Stallworth should have objected "each time the trial judge limited the attorney's efforts to cross-examine a particular witness." *United States v. Kone*, 307 F.3d 430, 437 (6th Cir. 2002). Despite defense counsel suggesting that they'd "work[] and chew[] on" it "as it goes," [R. 156: Philip Lawson, TR (Trial Day 1) at 1414], defense counsel elected not to press Sam further when Sam testified that he "[p]ossibly" expected to get a benefit for his testimony. [R. 157: David Sam, TR

(Trial Day 2) at 1449.] The government never objected, and thus, Stallworth cannot successfully complain that he preserved his current claims. [*Id.*]

In any event, "[w]e need not proceed past the first step" in the Confrontation Clause analysis. *Taylor*, 178 F.4th at 1026. The district court did not limit Stallworth's ability to cross-examine Sam about his "bias prejudice, or motive to testify." *Id.* at 1027. And Stallworth has not shown otherwise. He suggests, for example, that the "jury [wa]s entitled to know of" Sam's "incentive" to testify. Stallworth's Brief at 38. But Sam testified to just that. According to Sam, he "[p]ossibly" could benefit from his current testimony, and he had already benefitted from his prior testimony in another case. [R. 157: David Sam, TR (Trial Day 2) at 1448-49.] And this was all within bounds of the district court's ruling that authorized defense counsel to question Sam about his "hope[] of getting a reduced sentence." [R. 156: Court, TR (Trial Day 1) at 1414.] Indeed, the district court explicitly stated that defense counsel could question Sam about "his motivation in testifying." [*Id.* at 1415.] Sam's testimony and the court's ruling are in direct conflict with Stallworth's contrary claims on appeal. Stallworth's Brief at 39. Indeed, Stallworth cites no specific limitation or sustained objection that prevented him from questioning Sam further about his hope of benefiting from his testimony against Stallworth. *Id.*

Instead of identifying anything that the court prevented Stallworth from asking Sam, he takes issue with Sam's equivocal statement that he "[p]ossibly" could benefit from his testimony. *Id.* at 40. But a witness's honest answer is a far cry from a district court's improper limitation on testimony. And Stallworth elected not to press Sam about a possible benefit and instead chose to illustrate to the jury that Sam had already received a benefit for cooperating in another case by providing similar testimony. [R. 157: David Sam, TR (Trial Day 2) at 1448-49.] Stallworth's tactical decision at trial does not amount to an improper limit on cross examination. *See Kone*, 307 F.3d at 440 (explaining that witnesses should be permitted "to acknowledge—*if indeed they would have*—that they expected favorable treatment from the government") (emphasis added)).

Nor is it true that Sam was sure to benefit from his testimony. Instead, as Sam testified, he had not "been promised any motion for [his] cooperation," even though a benefit was a "[p]ossibl[e]." [R. 157: David Sam, TR (Trial Day 2) at 1441, 1449.] And as a legal matter, the government had the "power, not a duty" to file a substantial assistance motion here. *Wade v. United States*, 504 U.S. 181, 185 (1992) (citing U.S.S.G. § 5K1.1). Moreover, the court retained discretion about what to do in response to any substantial assistance motion. *See* U.S.S.G. § 5K1.1; 18 U.S.C. § 3553. Ultimately, Sam's testimony was the type of predictable

testimony about cooperation that counsel and the court anticipated. [R. 156: Court, TR (Trial Day 1) at 1414.]

The Supreme Court's decision in *Davis v. Alaska*, does not compel a different result. 415 U.S. 308 (1974). In that case, the lower court did not allow the defendant to cross-examine a witness, who identified the defendant in a photo lineup, about being on probation for a juvenile court adjudication at the time of the identification. *Id.* at 313-14. This limit on cross-examination did not allow the defendant to pursue his theory that the witness may have "acted out of fear or concern of possibly jeopardy to his probation" and may have falsely identified the defendant to avoid being named as a suspect in the crime. *Id.* at 311.

Here, by contrast, the district court encouraged defense counsel to question Sam about "his motivation in testifying." [R. 156: Court, TR (Trial Day 1) at 1415.] And Sam testified that he was in prison for "guns and drugs," specifically methamphetamine and fentanyl. [R. 157: David Sam, TR (Trial Day 2) at 1430.] Further, Sam had already testified in another matter and had received a benefit for that testimony. [*Id.* at 1447-48.] And he agreed that although he had not been promised anything in this case, he "[p]ossibly" could receive a benefit for testifying. [*Id.* at 1448-49.] There is no analogy to be drawn from *Davis* to the facts of this case.

Even if Stallworth somehow proceeds past the first step in the Confrontation Clause analysis, "the jury had enough information to assess" Stallworth's "theory of bias or improper motive." *Taylor*, 178 F.4th at 1025 (citation modified). As explained *supra*, the jury heard about Sam's prior conviction, the fact that he previously testified and received a benefit for that testimony, and the fact that he "possibly" expected a benefit for his testimony in this matter. [R. 157: David Sam, TR (Trial Day 2) at 1430-49.] Moreover, Stallworth argued these points in closing by claiming that Sam was there "to benefit" and "to mitigate his situation" because "he will likely get another benefit" from testifying. [R. 158: Philip Lawson, TR (Trial Day 3) at 1592.] Finally, considering the last step in the Confrontation Clause analysis, the government had an interest in not creating a mini trial regarding Sam and his prior cooperation and conduct, and thus, the government's interests outweighed Stallworth's interest in additional cross-examination. [R. 156: Court, TR (Trial Day 1) at 1415 (stating defense counsel should avoid "having Mr. Sam on trial").

Any error was also harmless beyond a reasonable doubt.[*] Although Sam's testimony was important, "the force of this sort of impeachment—to show bias based upon an expectation of later favorable treatment by the government—is

[*] Or if plain-error applies, no error seriously affected Stallworth's substantial rights.

extremely weak[.]" *Kone*, 307 F.3d at 439. Moreover, Sam testified about the possibility that he would receive a benefit and the fact that he already had received a benefit in another case. *See supra* at 32-33. And Sam argued these points at closing. [R. 158: Philip Lawson, TR (Trial Day 3) at 1592.] Other evidence at trial also confirmed that aspects of the firearm were consistent with a machine gun. *See supra* at 16-18. In short, this point was minor, and there was other evidence of Stallworth's guilt. Any error was harmless.

## CONCLUSION

This Court should affirm Stallworth's conviction.

Respectfully submitted,

JASON D. PARMAN
UNITED STATES ATTORNEY

CHARLES P. WISDOM JR.
CHIEF, APPELLATE DIVISION

By: s/ Amanda Harris Huang
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-4874
Amanda.HarrisHuang@usdoj.gov

**CERTIFICATEOF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). According to a computer count, the principal brief contains 9,330 words.

s/ Amanda Harris Huang
Assistant United States Attorney

**APPELLEE'S DESIGNATION OF DISTRICT COURT DOCUMENTS**

| Record Entry | Description of Document | Page ID# |
|---|---|---|
| 29 | Superseding Indictment | 90-98 |
| 109 | Jury Instructions | 506-48 |
| 111 | Jury Verdict | 550-51 |
| 137 | Judgment | 962-69 |
| 138 | Notice of Appeal | 970-71 |
| 156 | Trial Day 1 Transcript | 1283-420 |
| 157 | Trial Day 2 Transcript | 1421-565 |
| 158 | Trial Day 3 Transcript | 1566-635 |
| 163 | Notice | 1648-56 |